**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | |
|---|---|
| In re | ) Case No. 05-64019 |
| RANDOLPH GAMMONS and DONNA GAMMONS, | ) |
| Debtors, | ) Adv. No. 06-06058 |
| W. CLARKSON McDOW, JR., United States Trustee for Region Four | ) |
| Plaintiff, | ) |
| v. | ) |
| RANDOLPH GAMMONS and DONNA GAMMONS, | ) |
| Defendants, | ) |

**JUDGMENT**

For the reasons stated in the accompanying memorandum,

It is ORDERED, ADJUDGED AND DECREED that the complaint of the United States trustee seeking a judgment revoking the discharge of the Defendants is denied. Judgment shall be, and hereby is, entered in favor of the Defendants.

Upon entry of this Judgment the Clerk shall forward copies to the United States Trustee and to David Crandell, Esq., counsel for the Defendants.

Entered on this  5th  day of January, 2007.

William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re | ) | Case No. 05-64019 |
| | ) | |
| RANDOLPH GAMMONS and DONNA GAMMONS, | ) ) | |
| | ) | |
| Debtors, | ) | Adv. No. 06-06058 |
| | ) | |
| W. CLARKSON McDOW, JR., United States Trustee for Region Four | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RANDOLPH GAMMONS and DONNA GAMMONS, | ) ) | |
| | ) | |
| | ) | |
| Defendants, | | |

### **MEMORANDUM**

This matter comes before the court by way of a complaint filed by the United States trustee seeking to revoke the discharge of Randolph Gammons and Donna Gammons ("the Defendants"). Judgment shall be entered for the Defendants.

*Facts*

Prior to 1998, for ten years, Mr. Gammons taught Sunday school at a church in North Carolina. During this time he took a one-year disciple-ship training course. In early 1998, Mr.

1

Gammons accepted a position as the pastor for the New Hope Church in Bassett, Virginia.[1] He did not ask for a salary but the Church paid him approximately $160.00 per week.[2] Initially, the Church withheld, and paid to the respective governments, estimated taxes from the payments. On or about the latter part of 2003, the Church bookkeeper informed Mr. Gammons that the Church could no long afford to pay him a regular amount, but that it would continue to give him "love gifts". She also told him that any such payments would not be considered income for purposes of paying income taxes.[3] The Church ceased withholding estimated taxes. Thereafter Mr. Gammons did not include the love gifts as income on his income tax returns.[4]

On October 7, 2005, the Defendants filed a chapter 7 bankruptcy petition. He did not include the love gift payments as income on his schedule I. Mr. Gammons testified that he provided the Church records of the payments to the attorney that originally represented him. He further testified that he told his attorney the information that the bookkeeper had provided to him.[5]

While unstated, it appears that Mr. Gammons has been employed full-time at another occupation from the time that he accepted the position as pastor. Mr. Gammons has been employed full-time by Knauss Foods as a smokehouse operator since January of 2004. His gross income is $1,645.00 per month. His net income is $1,242.00 per month. On the date of petition, Mrs. Gammons was employed by Stanley Furniture Company. She earned gross income of $1,629.00 per month and net income of $1,201.00 per month. The Defendants earned total net income of $2,443.00 per month.

---

[1] See Transcript of Hearing: p. 18:13-19. The Court found Mr. Gammons to be an honest and credible witness.

[2] See Transcript of Hearing: p. 19:18 to 20:9.

[3] See Transcript of Hearing: p. 20:10 to 21:10. Mr. Gammons also testified that the Church bookkeeper was a bookkeeper for the Commissioner of Revenue in Martinsville, Virginia. Ibid.

[4] See Transcript of Hearing: p. 22:11-14.

[5] See Transcript of Hearing: p.27:7 to 28:5. The attorney that prepared the Defendants' bankruptcy petition and schedules is not the same attorney that represented him at the trial on this matter.

The Defendants scheduled $300.00 per month in charitable contributions. The records of the Church indicate that the Defendants made contributions totaling $3,803.00 in 2004 and $3,768.00 in 2005.

Mr. Gammons testified that the Church treasurer paid the bills and that all financial decisions were necessarily approved by the board of elders.[6]

On October, 2005, the Defendants filed the instant petition. On February 6, 2006, the Defendants' discharge order was entered and the case was closed. On February 11, 2006, the chapter 7 trustee received a letter from a creditor in which the creditor alleged that Mr. Gammons had received, and continued to receive, $700.00 per month from the Church which payments had not been disclosed on the Defendants' schedules.[7]

On June 21, 2006, the United States trustee filed this complaint seeking an order revoking the Defendants' discharge on the grounds that they had committed fraud by failing to report certain income. The complaint is based upon the letter that the chapter 7 trustee received from the creditor. The creditor is not identified in the record, but the creditor was properly scheduled by the Defendants.[8] The United States trustee asserts that the Defendants were attempting to avoid a potential motion for substantial abuse that might compel them to convert the case to chapter 13.[9] Mrs. Gammons did not appear at the hearing. There is no evidence that she was subpoenaed to appear.

## *Discussion*

This Court has jurisdiction over this matter. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(I). This court may render a final judgment. This complaint is brought under 11 U.S.C. § 727(d)(1), which provides that, on request of the trustee, a creditor, or

---

[6] See Transcript of Hearing: p. 26:6-25.

[7] Complaint, ¶ 5.

[8] See Transcript of Hearing: p. 38:20 to 39: 3. Testimony of Deborah Charles of the office of the United States trustee.

[9] See Transcript of Hearing: p. 4:23 to 5:8.

3

the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under section 727(a) if that discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge.[10]

Judgment will be entered in favor of the Defendants for two independent reasons. First, the party requesting the revocation of this discharge was clearly aware of the facts that give rise to the alleged fraud before the discharge was granted. Second, the United States trustee has failed to prove all of the elements of fraud.

    A.    Timing of the request.

Section 727(d)(1) requires that the requesting party did not know of the fraud until after the granting of such discharge. In this case, the requesting party clearly knew of the facts that give rise to the alleged fraud before the discharge was entered.

First, it is necessary to identify the "requesting party". It is not the United States trustee, the plaintiff in this case. Rather it is the anonymous creditor who initiated this proceeding. If the court were not to construe the statute accordingly, any scheduled creditor who was aware of facts underpinning a Section 727(d)(1) action could avoid the restriction that Congress intended by simply waiting until the case was closed before informing the chapter 7 trustee or the United States trustee.

In this case, the discharge was entered and case was closed on February 6, 2006. On

---

[10] Section 727(d) provides:
(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if--
    (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
    (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
    (3) the debtor committed an act specified in subsection (a)(6) of this section; or
    (4) the debtor has failed to explain satisfactorily--
        (A) a material misstatement in an audit referred to in section 586(f) of title 28; or
        (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

February 8, 2006, notice of entry of the discharge was sent to creditors.  The chapter 7 trustee received the letter from the creditor a mere three days later.  It is more than reasonable to conclude that the creditor waited until after the case was closed to bring the facts to the attention of the chapter 7 trustee.[11]  The creditor is not identified in the record, but the creditor was properly scheduled by the Defendants.[12]  And so the Creditor must have been aware of the case and of the information contained in the Debtors' schedules before the date that the discharge was entered.  The Court concludes that the anonymous creditor is the requesting party in this instance and that that creditor was aware of the facts that give rise to this action before the discharge was entered.  Judgment for the Defendants must be entered on this ground.

  B. Fraud.

Under section 727(d)(1) a creditor must prove the common law elements of fraud.  The United States trustee must prove that:

  (1) the Defendant(s) made the representation;

  (2) at the time of the representation, the Defendant(s) knew it to be false;

  (3) the debtor made the representation with the intent and purpose of deceit;

  (4) all parties in interest reasonably relied on the representation and the reliance was reasonably founded; and

  (5) the interest parties sustained a loss or damage as the proximate consequence of the representation having been made.

See, e.g., 4 Collier on Bankruptcy, §523.08[1][e], pg 523-45 to 523-46 (15th ed. Rev.) (Citations omitted.) (Providing the common law elements of fraud in a discussion of Section 523(a)(2)).  For purposes of this discussion, the victims of fraud must be characterized as all interested parties and each of them.

---

[11]  See Transcript of Hearing: p. 38:22-25.  Testimony of Deborah Charles of the office of the United States trustee.  "[The chapter 7 trustee] wrote us a letter because he received a letter right after the case was discharged".

[12]  See Transcript of Hearing: p. 38:20 to 39: 3.  Testimony of Deborah Charles of the office of the United States trustee.

In order to prevail the United States trustee must prove each element of fraud by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991) (Holding that the plaintiff must prove fraud under Section 523(a)(6).) The elements of fraud are presented in the conjunctive. The Plaintiff must prove each element by a preponderance of the evidence if he is to prevail. If the Plaintiff fails to meet its burden for any of the elements, then it cannot be awarded judgment.

Consequently, if it is determined that the Plaintiff has failed to prove one of the elements, the others need not be examined. In this case, the Court concludes that the Defendants did not intend to deceive any party in interest.

The Court found Mr. Gammons to be a very credible and honest witness. He testified that he was advised by the Church bookkeeper, who held a position with the county taxing authority that the payments that he received would not be considered income if he was willing to work for free and the payments were in the nature of a gift. He further testified that he informed his counsel of the advice that he had received and provided his counsel with a record of the payments from the Church.

While the advice that Mr. Gammons received may seem unplausible on the surface to some persons, it may be fairly inferred from the record that Mr. Gammons education in secular matters does not extend beyond high school. What may seem clear to those with sophisticated business or legal training could well seem murky to others. The Court is convinced that Mr. Gammons accepted the advice of the Church bookkeeper as true, especially when it was essentially confirmed by his original counsel. His schedules simply reflected that belief.

The United States trustee asserts that the Defendants did not schedule the love gifts as income because they were attempting to avoid substantial abuse action under Section 707(b). The Court does not believe that such is the case. First, the Defendants also omitted expenses that they could have scheduled as payments of charitable contributions. Mr. Gammons testified that in addition to the offering of approximately $300.00 per month that he gave the Church, he incurred out-of-pocket expenses that were not recorded. These include visits to hospitals, including those in Roanoke and Lynchburg, each of which is a round trip of more than ninety

6

miles.  Occasionally he would stay overnight in Charlottesville while visiting the sick there or would stay overnight while attending evangelistic conferences or revivals.  He also testified that he served as the youth pastor for the Church and often funded youth trips.   While these unrecorded out-of-pocket expenses do not excuse the Defendants' failure to schedule the "love gift" as  income, they provide further evidence that the Defendants were not attempting to avoid a motion to convert this case to chapter 13, as asserted by the United States trustee.

If they were attempting to avoid conversion to chapter 13, they would have scheduled love gifts as income and would have offset the out-of-pocket costs as charitable contributions. The Court concludes that the Defendants did not fail to schedule the "love gifts" as income with the intent and purpose of deceit.

Second, the Court does not believe that Mr. Gammons is so sophisticated in legal matters that he would be able to formulate a scheme to avoid a motion to dismiss for substantial abuse under section 707(b).  If he were, he would not have done so in the manner suggested.

The Defendants did not intend to deceive anyone.  For this separate reason, judgment shall be entered in their favor.

### *Conclusion*

Though they should have disclosed the "love gifts" as income, the Defendants did not intend to deceive any party in interest.  Furthermore, the requesting party in this instance must have known, before the entry of the discharge order, of the facts that gave rise to the allegations in the complaint filed by the United States trustee.  For each of these reasons separately, judgment shall be entered in favor of the Defendants.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee and to David Crandell, Esq., counsel for the Defendants.

Entered on this  5th   day of January, 2007.

_____

William E. Anderson
United States Bankruptcy Judge

7